CASE 51.—ACTION BY FRANK GOSS, PROSECUTED AFTER
        HIS DEATH BY EDWARD J. REISS, HIS EX-
        ECUTOR, AGAINST THE KENTUCKY REFINING
        COMPANY, FOR DAMAGES FOR PERSONAL IN-
        JURIES.—March 10, 1910.

## Goss Exr v. Ky. Refining Co.

Appeal from Jefferson Circuit Court. (Common
Pleas Branch, Second Division).

THOS. R. GORDON,. Judge.

Demurrer to petition sustained and plaintiff ap-
peals.—Reversed.

1. Master. and Servant—Injury to Servant—Negligence—Care
   of Incompetent Servant.—Where a servant's mind was so
   impaired by epileptic fits that he did not appreciate the dan-
   ger of the work of gluing barrels by pouring boiling glue
   from a tank into the barrels, and the master, though he
   knew the facts, directed the servant to do the work, and the
   servant was injured in consequence of falling into the tank
   while in a fit, the master was guilty of actionable negligence
   in assigning the servant to work at a dangerous place.

2. Courts—Jurisdiction—Presumptions—Courts of General Juris-
   diction.—A court of general jurisdiction will be presumed
   to have had jurisdiction of all matters before it unless
   the contrary is made to appear.

3. Wills—Probate—Presumption of Jurisdiction—County Court.
   —The county court has by statute general and exclusive
   jurisdiction over the subject of probate of wills, and it must
   be presumed that a county court probating a will would not
   have done so unless testator was domiciled in the county
   at the time of his death, and, in the absence of a showing
   to the contrary, it is not necessary to allege that testator
   was domiciled in the county.

4. Courts—Jurisdiction—Presumption—Courts. of Limited Juris-
   diction.—The jurisdiction of courts of limited jurisdiction
   must be made to appear affirmatively.

ROBT. L. PAGE for appellant.

O'NEAL & O'NEAL and EDELEN & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE NUNN.—Reversing.

On August 4, 1909, Frank J. Goss instituted an action against appellee, by which he sought to recover damages on account of personal injuries received by him while laboring for it. Goss died a short time after he instituted the action, and appellant, Edward J. Reiss, as executor, filed a petition for a revivor of the action and an amended petition to which a demurrer was interposed by appellee and sustained by the court; and from that judgment this appeal is prosecuted.

Omitting the formal parts, the amended petition is as follows: "The plaintiff, Ed. J. Reiss, states since the filing of the original petition herein that Frank J. Goss departed this life on the 21st day of August, 1909, leaving a last will and testament; that by order of the county court of August 25, 1909, he was duly appointed executor of the estate of said Frank J. Goss, deceased, and qualified as such by giving bond, all of which appears of record in the Jefferson county court, a certified copy of the order appointing him executor being filed herewith and made a part of this petition. Plaintiff states that for the past several years the decedent was subject to epileptic spells or fits, and that said spells occurred more frequently during the past two or three years previous to the death of decedent, and occurred with such great frequency as to materially weaken decedent's mind, and that decedent's mental and physical faculties were considerably impaired thereby. He says that for the past 10 years said Frank J. Goss at various times was employed by the defendant company as a laborer engaged in performing and doing work

that was not of a dangerous or hazardous character; that the defendant company, through its agents, servants, and employes superior in authority to decedent knew of his mental weakness and condition, and knew that the said Goss was a sufferer from epilepsy, and that previous to April 30, 1909, the defendant company never employed him to do or perform labor that was dangerous to one suffering from said disease. Plaintiff states that a few days before April 30, 1909, while working for the defendant company, decedent had an epileptic fit or spell, and that by reason thereof had ceased to work, which fact was known to the foreman of defendant company; that a short time thereafter decedent was approached by said foreman and requested to begin to go to work for the defendant company; and that the said Goss did return to work and was employed by the defendant company to cooper barrels or to do what is known as putting in and fastening barrel heads. Plaintiff says that on April 30, 1909, while said Goss was engaged in a harmless labor, and labor that was not dangerous or hazardous to a person in his condition, the foreman of the defendant company ordered and directed decedent to do what is known as gluing barrels—that is, to pour a liquid known as boiling glue or silica from a tank into a barrel, the liquid being placed therein for the purpose of stopping any leakage or holes that might exist in said barrels—that said liquid, which is known as silica or glue, was kept at a boiling heat in a tank about the size of an ordinary bath tub, the tank being placed upon the floor of defendant company. Plaintiff states that it was the duty of the person so employed to glue barrels to also clean said tank after the barrels had been glued by taking off the skim or skum from

the top of the glue and prepare said silica for use
thereafter, and to prepare it in a manner for the silica
or glue to be used again for the purpose of gluing bar-
rels.   Plaintiff states that the decedent did then and
there object to doing this character and kind of work,
and so notified the foreman thereof that it might be
dangerous in the event he should suffer or have an
epileptic fit or spell while engaged in work thereon,
and any work of the character herein set out.   Plain-
tiff states that the foreman, although knowing of
the weak mental condition of the decedent, assured
him that he had but recently had an epileptic spell,
and that he, decedent, would not have another for a
month or more, and that, further, there were only
about 150 barrels that needed gluing, and  that it
would only require a few hours' work to glue said
barrels, and assured the decedent that he would be
in no danger from working this length  of  time.
Plaintiff says that the decedent was told by the fore-
man of the defendant company that he had to comply
with the orders given him, and was given to under-
stand that, unless the decedent did the work ordered,
he would be discharged.   The plaintiff states that al-
though the decedent realized and knew that he was
an epileptic that his mental condition was such that
decedent did not and could not appreciate the danger
he would be subject to, and did not realize or believe,
after he had been assured to the contrary by his
foreman, who was superior in authority to him, that
there would be any danger in complying with the
foreman's orders.   Plaintiff states that because of
decedent's lack of sufficient mental faculties he did
not and could not appreciate the hazardous and dan-
gerous character of the work he was ordered to do,

vol. 137—26

and that, relying upon the assurance and superior knowledge of the foreman that said work was not dangerous or hazardous, or that decedent would not suffer any epileptic fit or spell, said decedent went to work carrying out the orders and instructions of the superior officer. Plaintiff states that within two or three hours after the decedent had been placed to work, as above stated, and while doing the work ordered of him to do, the decedent did have an epileptic spell, and that as a result thereof he fell into the tank containing this glue or silica, which was at a boiling heat. Plaintiff states that both the decedent's arms, from his elbows down to his finger tips, were scalded and burned, and the flesh thereon cooked to such an extent that his arms were greatly shriveled, that his finger nails were burned off of his hands, and that the glue or silica in said tank burned his face and head, and that the decedent was horribly burned in and upon his face, head and arms, and that, as a result of said injuries, the use thereof was permanently and entirely destroyed," etc.

After describing in detail his injuries, suffering, and the manner in which he was treated, which we omit, the petition continues as follows: "Plaintiff states that the decedent, Frank J. Goss, on account of the injuries received had to employ a physician and surgeon and incurred a liability of $500 for services rendered by said physician and surgeon. Plaintiff states that notwithstanding the fact that the defendant company by its agents and servants superior in authority to decedent knew that the decedent was incompetent and irresponsible, and could not appreciate the danger incident to the character of work he was ordered to do, was placed to do, and per-

forming labor that was hazardous and dangerous, and defendant company failed to provide a reasonably safe place for a person in plaintiff's mental condition to work and for a person suffering from epilepsy to work, and that, on account thereof, defendant assumed the risk incurred by the decedent at the time decedent was injured.''

Appellee contends that the action of the lower court should be sustained for two reasons: First, because the petition does not state a cause of action against it; second, it is not alleged in the petition, nor is it shown by the order of the county court appointing appellant executor of Goss, that Goss was domiciled in Jefferson county, Ky., at the date of his death. The petition, in substance, alleges that for years Goss had been a sufferer from epileptic spells, and that they had occurred so frequently that his mind had been materially impaired; that he had become irresponsible; that he was not capable of appreciating or realizing the danger incident to any work or labor assigned to him; that these facts were well known to appellee at the time it assigned Goss to labor at this tub of hot glue; that on the date of Goss' injury appellee's agent changed him from a reasonably safe place for one in his condition to labor and peremptorily ordered him to glue barrels, knowing at the time that it was a dangerous and unsafe place for Goss to labor in his impaired physical and mental condition, and in a short time after he began his labor he received his injuries. All this is admitted to be true by the demurrer. If Goss' mind was so impaired that he could not and did not realize and appreciate the danger incident to the labor he was ordered to perform, and appellee knew it, then appellee was guilty of actionable negligence in assign-

ing him to work at that place on the same principle as if it had assigned an immature and thoughtless child to labor in some unsafe and dangerous place and it had been injured by reason thereof. This principle has been announced so often that we deem it unnecessary to cite authorities in support of it.

Appellee's counsel cite three opinions by this court to sustain the judgment of the lower court, to-wit: Hasty v. C., N. O. & T. P. Ry. Co., 97 S. W. 433, 30 Ky. Law Rep. 144; Wilson v. Chess Wymond Co., 117 Ky. 567, 78 S. W. 453, 25 Ky. Law Rep. 1655; Andricus' Admr v. Pineville Coal Co., 121 Ky. 724, 90 S. W. 233, 28 Ky. Law Rep. 704. These cases are not applicable to the case at bar. In the first case named, Hasty received an injury to his arm and appellees' agent desired him to continue work, which he did upon the assurance of his superior that it would cause no further injury to his arm, but it did, however. In that case the court, in substance, said that the servant must determine for himself when he is able to work; that Hasty was more competent to judge of the extent of his injury than his superior, the agent of appellee, who was not a physician nor required to be. It was not shown in that case that Hasty's mind was impaired to such an extent that he could not realize or appreciate the risk he was to assume, and that appellee's agent, who was in authority, knew that fact. If such had been shown, we apprehend the result would have been different. What we have said with reference to this case will apply to the other cases cited.

As to the second proposition—that is, that appellant is not authorized to maintain this action as executor because it is not shown that Goss resided in Jefferson county at his death, and therefore the

county court was without jurisdiction to probate his will—the rule is that a court of general jurisdiction will be presumed to have had jurisdiction of all matters before it, unless the contrary is made to appear. The county court in matters of probating wills has general and exclusive jurisdiction, and therefore it must be presumed that the county court of Jefferson county would not have probated Goss' will unless he was domiciled in that county. In courts of limited jurisdiction it must be made to appear affirmatively that the court had jurisdiction of the matter, i. e., if the county judge holds an inquisition of lunacy, his orders must show affirmatively all things necessary to give jurisdiction, because he has no right to hold such inquisition if the circuit court of the county is in session. But this is not true in the probation of wills, because the statutes give the county court exclusive jurisdiction in such cases.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.