# Henry Bickel Company v. Wright's Administratrix.

(Decided April 18, 1918.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Second Division).

1. Master and Servant—Safe Place to Work—Question for Jury.—
Plaintiff's intestate, employed in widening a canal, was walking
on top of an old rock wall used as a cofferdam, when it collapsed
throwing him into the river where he was drowned. In an action
for damages for his death, evidence that the wall after remov-
ing the supporting soil, was without sufficient strength to with-
stand the force of the imprisoned waters, was sufficient to take
the case to the jury.

2. Death—Conflict of Laws—Evidence.—By the acts of the legisla-
ture yielding the sovereignty of the state to the United States
over the place where intestate was killed, the cession was made
contingent upon other events happening thereafter, and the
record is without evidence as to when, if at all, the United States
exercised its sovereignty over the canal property.

3. States—Jurisdiction—Death.—In such action, the presumption is
that the law of the state is co-extensive with its territorial limits
until an exclusion is shown by one claiming it; and to defeat
plaintiff's cause of action it was incumbent upon defendant to
plead and prove that the place of the accident was upon terri-
tory theretofore ceded by the state to the United States in the
manner and for the purpose stated in Art. 1, Sec. 8, constitution,
viz.: forts, arsenals, dockyards, and other needful buildings.

4. Trial—Tender of Amended Pleading.—Defendant's offer of an
amended pleading tendering a distinct defense from that con-
tained in its answer made at the conclusion of plaintiff's testi-
mony was properly rejected by the trial court.

WILLIAM W. CRAWFORD for appellant.

ROBERT L. PAGE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellee, plaintiff below, as administratrix of her
husband, who was killed while working for appellant,
instituted this action to recover damages for his death,
alleged to have resulted from the negligent failure to
furnish him a reasonably safe place in which to work,
and secured a judgment for $5,000.00, from which this
appeal is prosecuted.

The grounds relied upon for reversal are that there
was no negligence proven, and that the accident occurred

in territory ceded by this state to the United States for canal purposes and that the federal law, rather than the state law, applies, under which a recovery for negligence resulting in death is not allowed; and that for both reasons the motion for a directed verdict was erroneously overruled.

1. There is but little trouble with the question of negligence. Defendant, under contract with the federal government, was widening the Louisville & Portland canal, and, to protect its works from overflow and to allow the use of the old canal while the work progressed, the old or north wall of the canal, about eight feet in width, was left standing and used as a cofferdam. On October 5, 1915, while plaintiff's intestate, in the discharge of his duties as an employe of defendant, was walking on this wall or cofferdam, it gave way and he was drowned. That the wall was not strong enough, after defendant had removed the supporting soil, to withstand the strain placed upon it by the water in the canal is self-evident. However, as the rule *res ipsa loquitur* is applicable only in a qualified way, the giving away of the wall of itself is insufficient to prove negligence; but, "where the accident results from defective conditions which can be explained upon no reasonable hypothesis other than negligence, and circumstances appear independent of the accident itself indicating carelessness on the part of the defendant, there is sufficient proof to authorize the submission of the question of defendant's negligence to the jury" and to support the verdict. See the recent case of L. & N. R. Co. v. Allen's Admr., 174 Ky. 736, wherein the authorities are reviewed and the question exhaustively discussed, rendering unnecessary a discussion of this question here.

The proven numerous and extensive leaks are, we think, independent circumstances, in addition to the fact the wall proved inefficient for the purpose for which it was used, which, in spite of expert evidence for defendant that the leaks were not evidence of insufficiency, were sufficient evidence of defendant's negligence to carry the case to the jury and support the verdict; but, if mistaken in this, there was ample evidence for that purpose entirely independent of the proven necessity for frequent and almost constant repairs to the wall. Defendant's expert witnesses were more numerous than plaintiff's, and they testified that the wall was from

proper tests proven quite sufficient to satisfy every demand of sound engineering and there was no negligence in leaving the wall as it was left; but upon the other hand two qualified experts testifying for plaintiff stated that the wall was not thick enough, under existing conditions, to hold the weight of the imprisoned waters pressing against it, and seemingly proved it aside from the fact that the wall gave away.

In determining the strength of a wall, the conditions of which are ascertained by borings, against a known pressure from water, among the factors that must be considered as shown by the testimony of the expert witnesses on both sides, are the partings on the wall and the materials separated by the partings. It is conclusively established by the evidence that if the materials are rock upon rock, one coefficient must be employed in the calculations to determine the required thickness of a safe wall, but if the materials at the partings are rock upon mud or wet clay, a different coefficient must be employed, because rock slips on mud or wet clay much more easily and from less pressure than rock upon rock. In other words, the mud or wet clay acts as a lubricant, and its presence at a parting requires a heavier wall to hold a given pressure than where the greater friction of rock upon rock may be depended upon. The calculations and conclusions of the experts for defendant are based upon rock upon rock, while those of plaintiff's witnesses are based upon mud or wet clay at the partings, yet, all of these witnesses who testify upon the subject of seepage at the partings state it was natural and to be anticipated. It seems to us, therefore, that it must have been apparent to experts, as well as to others, that the muddy waters of the canal in seeping through these partings, as they were bound to do and as they were expected to do when the lateral support was removed by the contemplated excavations, would constantly carry and deposit in the partings mud and silt, which, during the progress of the work, would lubricate the partings and demand of sound engineering for a reasonably safe wall, one resultant from calculations based upon rock upon mud at the partings. And the failure so to do is confessedly the cause of this accident, as the wall did not overturn but the top slipped off at a parting, which defendant's experts prove it would not have done if rock had rested upon rock, as

was erroneously assumed in the calculations adopted by defendant, which was negligence because disregarding a condition reasonably to have been anticipated.

2. The second proposition is not nearly so clear in several respects, as is assumed by counsel for defendant, although it is true that in territory ceded by the state to the federal government in the manner and for the purposes named in clause 17, section 8, article 1, of the constitution of the United States, the state laws in force at the time of the cession continue in force but thereafter Congress exercises "exclusive legislation in all cases whatsoever over such district," Ft. Leavenworth R. Co. v. Lowe, 114 U. S. 525; Chicago &c. R. Co. v. McGlinn, 114 U. S. 547, and state legislation enacted subsequent to such cession does not affect the ceded territory. Western Union Telegraph Co. v. Chiles, 214 U. S. 274.

The troubles between this proposition, upon which counsel for appellant relies, and his conclusion therefrom of non-liability, even though negligent, are complicated and serious, dependent principally upon the proper answer to the following questions, all of which must be answered in the affirmative to sustain appellant's contention:

First. Was the place of the accident upon territory ceded by the state to the United States in the manner prescribed in article 1 of the federal constitution?

Second. Is property ceded for a canal a place ceded for "forts, magazines, arsenals, dockyards or other needful buildings," as contemplated by the constitutional provision?

Third. Was the cession complete prior to the adoption of our present state constitution, which makes actionable ordinary negligence resulting in death?

Counsel for appellee has conceded in argument that the accident happened on territory within the state boundary, but owned and controlled by the federal government as a canal, and we shall therefore assume that such is the case, although in our minds there is serious doubt whether the only testimony on that question, given by Mr. Burk and Mr. Butler, is sufficient to establish that fact, since the location and extent of the right of way for the canal are not definitely proven and Mr. Burk only stated he supposed the accident occurred upon government property because the government was in

control of the work, while Mr. Butler went but little further, and neither professed to know even by reputation the exact location of the right of way, so that their testimony was but the expression of opinions upon a question about which neither qualified to give his opinion; and their evidence with reference thereto, if objected to, would have been excluded, as was the attempt to prove by Mr. Butler the location of the right of way.

However, our conclusion with reference to the third question propounded above renders unnecessary a further discussion of this point, and permits us also for the purposes of this opinion, to assume that the canal right of way was ceded by the state in the manner prescribed by the federal constitution, and that a canal is a place within the contemplation of the purposes for which places may be ceded to the federal government so that the jurisdiction of that government thereafter is exclusive of state jurisdiction, although upon both of these questions we are extremely doubtful, especially upon the latter proposition, for the Supreme Court of the United States has held in the case of Fort Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, that "this power of exclusive jurisdiction is to be exercised, as thus seen, over places purchased, by consent of the legislatures of the states in which they are situated, for the *specified purposes* enumerated" . . . . "but when not used as such instrumentalities, the legislative power of the state over the places acquired, will be as full and complete as over any other places within her limits"; and the ninth and tenth amendments reserve to the states all powers not expressly delegated. If a canal, which is not a fort, a magazine, an arsenal, or dockyard, is to be included, it must be as a "needful building," and if a canal is such then every federally constructed lock and dam or what not is also included and all railroads may soon pass out of state jurisdiction, a result which would wonderfully curtail state authority and embarrass all courts in the administration of justice with any degree of uniformity.

But, assuming that these propositions are true, let us examine the question of fact as to when the cession occurred as disclosed by the record or within our judicial knowledge. The Kentucky legislature, by an act approved February 22, 1844, gave to the United States government permission to purchase the Louisville &

Portland canal, and provided that in the event the federal government made the purchase "the jurisdiction of this Commonwealth over the canal shall be yielded up to the government of the United States." But this permission was not immediately, if ever, exercised by the federal government, because in 1860 Congress adopted a resolution authorizing the "president and directors of the Louisville & Portland Canal Company," with the company's revenues and without liability to the United States government, to enlarge the canal and construct a branch canal. Nor, had this permission been utilized on March 28, 1872, because on that date the state legislature authorized the president and directors of the canal company to surrender the canal and all of the property connected therewith to the federal government upon certain terms and conditions. On March 3, 1873, the Congress appropriated $100,000.00 for the purpose and authorized the Secretary of the Treasury, on behalf of the United States, to assume the control and management of the canal, in conformity with the terms of the Kentucky act of March 28, 1872, "at such time and in such manner as in his judgment the interests of the United States and the commerce thereof may require." These are the only acts of the state legislature or of Congress referring in terms to this canal property. On August 16, 1892, section 2376, Kentucky Statutes, was approved, which is as follows:

"That the Commonwealth of Kentucky hereby consents to the acquisition by the United States of America of all lands and appurtenances in this Commonwealth heretofore acquired or that may be hereafter acquired by purchase or condemnation for the erection of forts, magazines, dockyards, and other needful buildings, including post offices, custom houses and court houses; also lands for docks, dams, canals in improving navigation of the rivers and waters within and on the borders of the Commonwealth of Kentucky."

It will be seen that none of these acts establishes the date when the cession became effective, or whether in fact it has ever become effective; and there is no proof whatever in the record upon the question, unless it be assumed, as is done for the purposes of this opinion, that the proof of Messrs. Burk and Butler establishes the fact that at the time of the accident the place had been ceded by the state to the federal government.

It is contended, however, by counsel for appellant that the burden was upon the plaintiff to prove the facts necessary to make out her case, and that if the place of the accident was without the jurisdiction of the state, to prove that the law of the place of the accident authorized the recovery; and it may be conceded that generally this is the rule, which is thus stated in 8 Am. & Eng. Ency. of Law (2 ed.) p. 880:

"There being no right of action at common law for an injury causing death, the plaintiff in such action must specifically aver and prove the laws of the state where the injury occurred permit such an action, *unless the action is brought in the state where the injury occurred.* And if it appear, from the lack of such averment and proof, or from proof by the defendant, that the laws of the state where the injury occurred provide for no such action, the suit must be dismissed without regard to the provision of the *lex fori.*"

Upon the other hand appellee insists that, since the accident was shown to have occurred within the state limits, the burden was upon the defendant, in order to secure a claimed exemption from the state law, to prove that the place of the accident was upon territory excluded from state jurisdiction. This is the vital point in this discussion. At this point, it is proper to state that there is no question about the court's jurisdiction to try this action, about which there is much discussion in brief, since the action is transitory, and the court unquestionably had jurisdiction of the subject matter and the parties, Ohio River Contract Co. v. Gordon, 170 Ky. 412, 244 U. S. 68, and the only debatable question is what law is applicable, whether the state law which gives a right of action for death from negligence, or the federal law which, under the circumstances here, is the common law, as it has never been altered by congressional action and which does not recognize such right of recovery. The question involved, however, is analogous to the question of the jurisdiction of the court, since the jurisdiction of the state over territory entirely within its borders is involved, and since we have not been referred to, and have been unable to find, any authority directly in point, we are authorized, it seems to us, to rely upon this analogy.

A rule uniformly recognized is that "A court of general jurisdiction will be presumed to have had jurisdic-

tion of all matters before it unless the contrary is made to appear." Goss v. Kentucky Refining Co., 137 Ky. 405, 12 Enc. of Pleading & Practice 173. If a presumption exists in favor of the jurisdiction of a state court of all matters unless it is shown otherwise by the defendant, ought not the same presumption with even more insistence be indulged with reference to the jurisdiction of the state over all matters within its boundaries, unless and until the contrary is made to appear by the defendant?

"It is a rule of pleading that a plea to the jurisdiction of a court of general jurisdiction must aver facts showing the absence of jurisdiction, and must be certain in every particular. In other words, the defendant must, by his plea, show that the court has no jurisdiction in any event." 12 Enc. of Pleading & Practice 182.

"Mere general conclusions will not be sufficient in a pleading averring lack of jurisdiction, but the facts showing want of jurisdiction must be positively alleged with the utmost degree of certainty." 31 Cyc. 168.

Since the defendant, to avoid the jurisdiction of the court, must allege and prove the facts showing the lack of jurisdiction, surely the defendant who seeks to avoid the jurisdiction of the state within its borders, must plead and prove the facts with the utmost degree of certainty, since the laws of the state must necessarily be presumed to extend to every part of the state, and must be applied uniformly and remorselessly, unless and until it is clearly and positively shown that a higher law prevails, and every presumption is insistent on the side of the state's sovereignty compelling a dissolution of every doubt in its favor.

Plaintiff brought this action upon the theory that the accident happened in this state. Defendant answered and permitted the case to go to trial upon the same theory, under which it was neither necessary to plead nor to prove the law in reference to the negligence alleged. Moreover, it was established without contradiction that the accident occurred within the limits of the state, and the presumption is unavoidable that the state law is applicable. As has been said, a right of recovery for negligent death exists in this state, and this right was granted by our present constitution, which went into effect September 28, 1891. So that, under the presumption that the law of the state is co-extensive with

its limits, until an exclusion is proven by the one claiming it, to defeat plaintiff's cause of action it was incumbent upon defendant to plead and prove that the place of the accident was upon territory ceded by the state to the United States in the manner and for the purpose stated in article I., section 8, of the constitution, prior to the date on which the state law became effective fixing a right of recovery for negligent death. And this it did not do.

After the case had gone to trial upon the sole issue of whether the defendant was guilty of negligence in the death of plaintiff's intestate, and after plaintiff had completed the introduction of her testimony, the defendant tendered an amended answer in which an attempt was made to plead that the place of the accident was within the exclusive jurisdiction of the federal government which the court refused to permit to be filed upon the ground that its offer was untimely, and that it did not state facts constituting a defense, of which ruling appellant complains.

As a consequence of our conclusion that it was incumbent upon the defendant to plead and prove this defense, it follows, of course, that this was a separate and distinct defense from that made in the original answer, and not having been offered until after the case had gone to trial and after plaintiff had completed the introduction of her evidence, it was within the sound discretion of the trial court to give or withhold permission that it might be filed; and, since it presented a separate and distinct defense, to meet which plaintiff would have required proof which at that late date she would have been unable to produce, and of the necessity for which she had been given no warning, we do not think the court abused the discretion reposed in it in such matters by section 134, civil code. C. & O. Ry. Co. v. Conley, 136 Ky. 601; Lanman v. Louisville Dry Goods Co., 138 Ky. 798; Birch v. King, 71 N. J. L. 392. Moreover, the tendered answer stated only a conclusion of law and did not plead the facts with reference to the cession necessary to state such a defense.

Wherefore, the judgment is affirmed.