## ATCHISON, TOPEKA & SANTA FE RY. CO. et al. v. PERRYMAN.

No. 32581. March 30, 1948.

Rehearing Denied April 27, 1948.

*192 P. 2d 670.*

leged to have resulted from negligence of defendants.

Plaintiff's petition alleged that he sustained an injury in March, 1943, while engaged in taking up an old railway track for the defendant company; that while he and a fellow servant, the defendant Abraham Columbus, were lifting an old tie from the roadbed, the said Columbus negligently, and without warning to plaintiff, jerked or threw the tie so as to cause plaintiff to throw his weight and the weight of the tie on his right foot and ankle, resulting in a bruise and sprain of the ankle and finally resulting in the loss of his leg.

Defendants filed answer denying the allegations of plaintiff's petition and pleading contributory negligence, and presented evidence thereunder tending to show that no accident took place causing the injury; that defendants were not negligent; that plaintiff's troubles were due to a circulatory disease known as Buerger's disease in plaintiff's legs and feet.

At the conclusion of all the evidence plaintiff was granted leave to file an amendment to this petition, over defendants' objection.

The amended petition charged negligence against the railway company in that it permitted the plaintiff to return to work as a section hand knowing plaintiff was afflicted with Buerger's disease. That plaintiff had no knowledge he was afflicted with such disease, that defendant knew, or should have known, that it was dangerous for a person having Buerger's disease to do such work.

Rainey, Flynn, Green & Anderson, of Oklahoma City, and Abernathy & Abernathy, of Shawnee, for plaintiffs in error.

Reily, Reily & Spurr and Clarence Tankersley, all of Shawnee, for defendant in error.

WELCH, J. Plaintiff sued for damages for the loss of his right leg alleged to have resulted from negligence of defendants.

The record reflects that plaintiff had been employed by the defendant company for several years as a section laborer. In April, 1942, one of the toes on his left foot became infected and sore to such an extent that he quit work temporarily and obtained treatment from the doctor at Shawnee, who took care of the railway employees,

and then at the hospital of the Atchison, Topeka & Santa Fe Hospital Association at Topeka, Kan. It was found that he was afflicted with Buerger's disease. This disease causes the blood vessels in the extremities to be obstructed. When blood cannot reach the toes or other afflicted parts, gangrene sets in and amputations become necessary to prevent further spread of the disease.

Plaintiff's left foot was given treatment at the hospital until July 6, 1942, at which time his left great toe was amputated. He returned to his employment as section laborer on January 2, 1943, after receiving a release from the local physician at Shawnee, and continued to work until April, 1943. He then requested and was given treatment by the local physician for infection in his right foot until August, 1943, when he went to the Topeka hospital, where, in December, 1943, his right leg was amputated by reason of the Buerger's disease condition.

Plaintiff testified that during the period of his employment from January, 1943, to April, 1943, he received an injury; that at the time he was engaged in carrying ties dismantling a track; that he was being assisted by defendant Columbus; that Columbus jerked the tie and plaintiff both, causing plaintiff to fall in the trench left when the tie was taken up; that his right ankle struck a big cinder in the tie bed; that his ankle thereafter continued painful and became progressively swollen and inflamed until the time of amputation in the Topeka hospital in December, 1943; that he was never told at any time that he was afflicted with Buerger's disease nor warned of any danger because of any affliction he might have.

A doctor, witness for plaintiff, testified concerning the nature of Buerger's disease and in response to hypothetical questions testified that an injury such as described by plaintiff to a person afflicted with Buerger's disease might progress to a point that amputation would be necessary. And, over the objection of defendants, testified that work of the nature plaintiff was doing was dangerous for a person suffering from Buerger's disease.

The defendant Columbus testified that he carried no ties with plaintiff and did not jerk or drop a tie being handled by plaintiff and did not see plaintiff fall or suffer any injury at any time. Other members of the section crew testified they saw no fall, accident or injury. Both the local railway physician and the surgeon who performed the two amputations testified that plaintiff was afflicted with Buerger's disease prior to the first amputation and that plaintiff was at all times informed of the nature of his affliction.

There was testimony concerning the disease that it was incurable and usually progressive, but could at times be arrested by amputation; that trauma or bruises would be apt to cause a flare-up of an arrested case and necessitate amputation; that work of a nature where bruises might be received would be dangerous to a person having Buerger's disease.

Judgment was rendered for the plaintiff in accord with the verdict of the jury, and defendants appeal.

It is first urged that the evidence failed to establish negligence of the defendants causing plaintiff's injury and that defendants' demurrer should have been sustained and judgment rendered for defendants.

It was shown that defendant jerked the tie and plaintiff at a time when plaintiff was at the edge of the trench and burdened with a heavy load, causing plaintiff to fall and suffer an injury. We think such an act by defendant, under the circumstances, would reasonably be expected to cause plaintiff to fall and suffer some injury. Such an act, under the circumstances, does not harmonize with ordinary prudence. Defendant Columbus should have fore-

seen that as a natural and probable consequence of his act, plaintiff would be injured.

From a consideration of all the evidence it is made to appear that defendant company assigned plaintiff to work which exposed him to unusual perils by reason of his physical affliction, such affliction and peril being known to defendant and unknown to plaintiff, resulting in injury to the plaintiff.

The rule as announced in Logan v. Logan et al., 197 Okla. 88, 186 P. 2d 878, is applicable in this case:

"Where defendant interposes a demurrer to plaintiff's evidence and after said demurrer is overruled introduces his own evidence, the trial court's judgment will not be reversed on account of the alleged error in his ruling on the demurrer if the judgment is supported by the evidence as a whole."

There was much conflict in the evidence, but this court will not weigh the evidence. It may be said here, as was said in Braniff v. McPherren, 177 Okla. 292, 58 P. 2d 871:

"Evidence reasonably tending to prove either directly or indirectly or by permissive inference essential facts is sufficient to sustain judgment."

We think from all the evidence introduced there were facts shown, together with all reasonable inferences to be drawn therefrom, sufficient to establish the allegations of negligence and injury and sufficient to support the verdict and judgment, and that the trial court did not err in refusing to render judgment in favor of defendants.

It is next contended that the court erred in permitting plaintiff to file the amendment to the petition, for the reason that the amendment constituted a material change in the issues, and was based on evidence admitted over defendants' objection.

After allowance of the amendment defendants made no request for continuance, or time, nor sought to amend their answer, which contained a denial of allegations of negligence and a plea of contributory negligence, nor made any request to introduce further evidence.

The case came on for trial on the 3rd day of October, 1945. Prior to that time, and on the 25th day of September, 1945, the defendant took the deposition of Dr. M. L. Bishoff, chief surgeon of A., T. & S. F. Hospital Association, who testified that plaintiff had Buerger's disease, as a result of which his great toe was amputated in that hospital on July 6, 1942. This witness further testified that his knowledge of the character of that disease required a prognosis that sooner or later plaintiff would have more trouble, and that the disease was fairly uniformly progressive; that he was doubtful of the ability of plaintiff to return to his former position, because the disease was of a progressive nature, and aggravated by exercise. When the case came on for trial plaintiff's attorney made an opening statement to the jury wherein he stated what plaintiff expected to prove in support of his petition and right to recover, and after a complete statement as to the Buerger's disease, that defendant knew of such disease and the dangers to plaintiff of work of the character plaintiff was doing, and that plaintiff had no knowledge of the nature of his ailment, and no knowledge of the hazard and risk he was taking in performing the labor which defendant required him to perform in his employment, and closed his opening statement to the jury as follows:

"Now, if we show you these facts, not knowing he had any trouble of any kind in his system, and the railroad company doctors knew what was liable to happen if he got injured in a dangerous employment, where he was liable to strike himself or likely to receive a blow of some kind, and from that blow this infection occurred on account of the peculiarity of this disease, and the result of that blow was he lost his

leg, we think we are entitled to recover."

To the opening statement of plaintiff, defendant made no objection, and in its opening statement likewise stated that plaintiff was afflicted with Buerger's disease; that it expected to prove that plaintiff's disability was due to such disease and not to any act of negligence on its part; that it expected to prove that its doctors advised plaintiff of the character and nature of the disease, and that plaintiff was, therefore, at the time of the injury and prior thereto, fully aware of his own physical condition.

Plaintiff introduced testimony, admitted over defendants' objection, that the kind of work plaintiff was doing was a dangerous avocation for a person suffering from Buerger's disease. The defendants thereafter introduced witnesses who testified to the same thing and without objection. Defendants' witnesses further testified that plaintiff had Buerger's disease and, on cross-examination and without objection, testified that defendant company's physician released plaintiff as fit to return to work, knowing plaintiff to be so afflicted at the time and that such work was dangerous for one afflicted with Buerger's disease.

In the case of Wynnewood Cotton Oil Co. v. Moore, 54 Okla. 163, 153 P. 633, in paragraph 2 of the syllabus, this court said:

"The statutes, and also the decisions of courts of this state, are extremely liberal in permitting amendments to pleadings so long as such amendments are in furtherance of justice, and amendments which even change the cause of action may be permitted, provided they do not substantially change the plaintiff's claim."

In Oklahoma, K. & M. Ry. Co. v. Wilson, 84 Okla. 118, 202 P. 275, the following rule is stated:

"In an action for damages for personal injuries the insertion of additional allegations of negligence in the petition during the progress of the trial does not change substantially the plaintiff's claim within the meaning of section 4790, Rev. Laws, 1910."

And in a recent case, Thomas et al. v. State ex rel. Com'rs of Land Office, 197 Okla. 450, 172 P. 2d 973, it was said:

"To permit amendments when not changing the cause of action rests within the sound discretion of the trial court and will not be disturbed on appeal unless it affirmatively appears that its exercise has been abused to the prejudice of the complaining party."

Defendants fail to point out, with any particularity, wherein they were prejudiced by the action of the trial court in allowing the amendment. They assert they had no opportunity to prepare a defense thereto and were taken completely by surprise and had no opportunity to ascertain the law applicable to such an issue, but they sought no continuance and gave no indication of surprise concerning the testimony of their own witnesses. There was sufficient testimony upon which the amendment could be based, received without objection, and under the circumstances, we are of the opinion the court had authority within its discretion to permit the amendment.

Defendants contend that the court erred in giving the following instructions:

No. 9. "You are instructed that it is negligence for a master to place a servant in an arduous employment when said master knows, or has reason to believe, that his servant is afflicted with a disease from which an injury might naturally and necessarily follow such employment when said servant did not know of the dangers incident to such employment, and did not know that he was afflicted with such disease."

No. 16. "You are instructed that if you find and believe from the preponderance of the evidence in this case that while employed by the defendant railroad company the plaintiff suffered

from an injury to his foot, and was sent to the Santa Fe Hospital at Topeka, Kansas, for treatment, and that while there the physicians for the defendant railway company learned that the plaintiff had a physical condition known as Buerger's disease, but that the plaintiff was given no information as to his condition, or that he had such disease, or that it was hazardous for him to work where he might sustain an injury or bruise, which would or might cause a gangrenous condition to arise, with a consequent result of an amputation of the infected part, or some portion thereof, and that he was discharged from said hospital with permission to return to work for said defendant, and that the said defendant put said plaintiff back to work as a section hand, and that the defendant knew or could have known from its doctors' reports that the plaintiff had Buerger's disease and that it was hazardous to employ him at work where he might receive a blow or bruise which might, or probably would, cause an aggravation of the said disease, resulting in a gangrenous condition and possible amputation of the afflicted portion of plaintiff's body or limbs, and that the defendant failed to inform the plaintiff of his said condition and that through the negligence of a fellow servant, one Abraham Columbus, the plaintiff suffered certain bruises and sprains, as alleged in his petition, which resulted in the loss of his leg by amputation, then you will find for the plaintiff, and assess his damages at such sum as you believe will reasonably compensate him for such loss or damage, not to exceed the sum of $25,000 the amount sued for.

"On the other hand, if you do not so find, or further find plaintiff was informed or had a knowledge of his physical condition, and that he assumed the risks of his employment as a section hand, then your verdict will be for the defendants."

Defendants present argument that the rule applicable to this case is that the duty rests with the servant to determine for himself whether he has sufficient health and strength to perform the duties of a position and not upon the master. Defendants cite War-

den-Pullen Coal Co. v. Wallace, 176 Okla. 604, 56 P. 2d 802, and Knox v. Schomaker, 191 Okla. 337, 129 P. 2d 841. Both of these cases declare the rule that the servant must determine for himself whether his health and strength are adequate for the performance of the labor agreed to be performed and the nonliability of the master for injuries to the servants as the result of overexertion in performing the stipulated labor. The Warden-Pullen case also declares the rule that the master must furnish the servant a reasonably safe place in which to work. The Knox case is distinguished by the fact that therein the servant was as well aware of his unfitness for the employment as was the master. The Warden-Pullen case turns on the presumed knowledge of the servant from the very nature of the situation. Note the following quotation found in that opinion:

"We quote from Louisville, etc., R. Co. v. Sawyers, supra, as follows: 'The only safe and practical rule is that each man is the best judge of his own physical strength and powers of endurance; that he knows better than any other can when the limit has been reached, and when, in following his instinct of self-preservation, he must desist and exercise his right under the law to give up his work if it is more than he can stand.' "

The above mentioned rule is based on knowledge or presumed knowledge of the servant and is inapplicable to the case at bar. Right to recovery in this case is based on positive lack of knowledge by the servant of his affliction and therefore lack of knowledge of exposure to greater dangers than the work necessarily entailed and positive knowledge and presumptive knowledge of these matters by the master.

In 3 Labatt, Master and Servant, section 1082, we note these expressions:

"In most instances the injured party is a coemployee of the servant whose unfitness is complained of. But such unfitness may conceivably create a cause of action in favor of the unfit

servant himself. The reason why recovery on this ground is so rarely sought is doubtless that, in the nature of the case, the unfit servant is almost always aware of his unfitness. The effect of his knowledge is to bring the situation within the scope of the principle that, if a person of apparently full age and complete understanding undertakes certain duties, he is presumed to appreciate and accept the risks incident to those duties. . . ."

The two cases cited are within the purview of the above expressions. The above quotation is followed by this language which appears applicable to the case at bar:

" . . . But if this element of the incompetent servant's knowledge be abstracted, his right to recover for injuries received by himself is indisputable, the situation being essentially the same as where a servant, without being taken outside the scope of the duties defined by his contract (see chapter LVIII., post) is assigned to work . . . which exposes him to unusual perils by reason of some physical or mental defect. . . ."

In the notes to the text is found the following:

"If a servant's mind is so impaired by epileptic fits that he could not and did not realize and appreciate the danger incident to the work of gluing barrels which he was directed to perform by the master, who had knowledge of the servant's condition, then the master is guilty of actionable negligence in assigning him to that work. Goss v. Kentucky Ref. Co. (1910) 137 Ky. 398, 125 S. W. 1061."

Defendants further contend that the instructions were erroneous in that they failed to place upon the plaintiff the burden of also proving that the defendant employer knew plaintiff was ignorant of having the disease and the probable effect thereof, and cites Crowley v. Appleton, 148 Mass. 98, 18 N. E. 675.

Under the undisputed evidence, plaintiff was afflicted with a most rare disease not commonly known or recognized, difficult of diagnosis and discovery and unusual in it nature; plaintiff received no treatment at any time except from the defendant company doctor or doctors in communication with said defendant company, and plaintiff was an uneducated man.

The instructions given placed the burden on plaintiff of proving not only that said doctors discovered the disease, but that they never at any time told him of his condition or the nature and characteristics of the affliction and that he never received such knowledge from any source.

Without discussion of the cited case or correctness of the rule announced therein, or its application to the instant case, it is sufficient to note that under the undisputed facts in this case, the instruction given in effect required plaintiff to establish that the employer knew him to be ignorant of his condition. The jury resolved this question in favor of the plaintiff.

Defendants further complain of the instructions that they assume that the defendant company was bound by the knowledge of the doctors. One of the doctors, a witness called by defendant company, testified that he was a company doctor at the time he was treating plaintiff for Buerger's disease, and made a report to the company that plaintiff had the disease.

We think the instructions correctly state the issues presented by the pleadings and evidence, and correctly state the law applicable thereto and there is competent evidence reasonably tending to support the verdict of the jury.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J. and CORN, ARNOLD, and LUTTRELL, J. J., concur. BAYLESS and GIBSON, JJ., dissent.

———

GIBSON, J. (dissenting). I cannot concur in the opinion of the majority.

Under the original petition, upon which the cause was tried until the close of the evidence, the alleged basis for liability of the defendant railroad company was not negligence of the company but that of a fellow-servant for whose negligence the company becomes liable solely by reason of a provision of the Constitution (Const. Art. IX, sec. 36). Under the amendment to the petition which, over objection, was permitted to be filed after the close of the evidence, the alleged basis of liability of the company is that of the negligence of such company as the sole proximate cause. Therefore, it was not an amendment to the cause of action originally stated, but was an attempt to state a new, separate and distinct cause of action.

These issues are clearly distinct because, severally stated, either, if good in fact and law, would sustain a recovery for the probable damage sustained, independently of the merits of the other issue. Conceding for the purpose of the discussion only, that the issues are consistent and could be joined, it follows that, if both were stated in the petition when filed, they should appear in different counts, because, presenting distinct claims involving distinct issues of both fact and law, the jury would have to be instructed as to each. It is not only manifest that the claims are distinct but also the defenses would be different both as to the facts and the law involved.

The authority relied on for the amendment is Tit. 12 O. S. 1941 §317. The right thereunder for an amendment at such time as here is limited by the following: "when such amendment does not change substantially the claim or defense." In construing this statute, we held in Combs v. Gough, 147 Okla. 40, 294 P. 165, as follows:

"It is reversible error to permit, after the evidence is in, an amendment to plaintiff's petition so as to change substantially his claim and the defense thereto. Jones v. Exchange Nat. Bank, 124 Okla. 5, 253 P. 49."

And to the effect that authorities generally hold that amendments after close of evidence presenting new issues should be refused, see text and cases cited 49 C. J. 481, §614; p. 493, §652.

In the majority opinion reliance is placed upon Oklahoma, K. & M. R. Co. v. Wilson, 84 Okla. 118, 202 P. 275, wherein it is held that the insertion of additional grounds of negligence may be inserted in the petition during the progress of the trial. Therein a new cause of action, upon a new and distinct theory of negligence, was not stated, but merely new allegations of negligent acts, consistent with the acts of negligence which formed the basis of the action. Such is not the case here.

In my opinion the ground of action alleged in the amendment is inconsistent with, because contradictory of, that alleged in the petition. The substance of the amendment is that by reason of a disease suffered by plaintiff, any bruise or other slight injury was liable to produce serious results. That by reason thereof he was not physically fit to bear the risks of the work of a section hand. That he was not aware of the fact that he had such disease. That the company knew or is charged with knowledge that defendant had such disease and therefore was negligent in employing him to do that work, and that same was the proximate cause of the injury received. In the petition it is alleged that through the negligent act of a fellow-servant he was thrown into a ditch, thereby causing the injury sustained.

I consider the negligence of the company, if any, which is sought to be alleged in the amendment, would be in exposing the plaintiff to those incidental risks of the employment normally assumed by the servant but which plaintiff, by reason of his unfitness and ignorance thereof, could not, in law, be held to have assumed. The idea that plaintiff received his injury as the result of any such ordinary risk is not only inconsistent with but expressly negatived by the charge in the peti-

tion that same was caused by the negligent act of another. If it be true he was caused to fall by the negligent act of another, then, even though the company was negligent in so employing plaintiff, such negligence could not have been the proximate cause of the injury. The two theories of liability cannot co-exist because liability under either excludes the existence of the ground upon which the other liability rests.

Mention is made in the majority opinion of the opening statements of counsel. New causes of action cannot be alleged by plaintiff's attorney stating to the jury what his facts would show.

The effect of the amendment is to permit the plaintiff, on the basis of evidence introduced on the trial of one issue, to claim and the jury to award damages on a distinct theory which was neither tried nor placed in issue in time to be tried and which in effect is a departure from the theory upon which the cause was tried. To my mind the situation is a flagrant example of the abuse of judicial power the statute was designed to prevent.

It is said in the opinion:

"After allowance of the amendment defendants made no request for continuance, or time, nor sought to amend their answer, which contained a denial of allegations of negligence and a plea of contributory negligence, nor made any request to introduce further evidence."

After both plaintiff and defendant had rested, the record discloses the following:

"Mr. Fred Reily: If the court please, at this time, the plaintiff desires to file an amendment to his petition to conform to the evidence, and we ask leave to file an amended petition to conform to their proof and to conform to our proof.

"Mr. Gibbens: The defendant objects as being a complete change of the issues in the case, and a change the defendant is not prepared to defend, and it comes as a complete surprise to these defendants.

"The Court: Let the record show the objection is overruled; the application to amend the petition to conform to the evidence is granted.

"Mr. Gibbens: The defendants except."

In view of the fact that the amendment was in reality the allegation of a new cause of action, I think the grounds of objection of the defendant were sufficient.

Since the issue of negligence of the company alleged in the petition has not been tried below, I think the question of the sufficiency of the amendment to state and that of the evidence to prove a right of action thereunder is not properly involved on this appeal.

However, if it were proper to consider the amendment and the evidence supporting it, I think the judgment would have to be reversed for it nowhere appears that defendant knew that plaintiff did not know of his diseased condition and any consequent danger therefrom. For that reason I think instruction No. 9 was erroneous and instruction No. 16 was equally erroneous.

Mr. Justice BAYLESS concurs in these views.