THE STANDARD OIL COMPANY OF INDIANA *v.* HELMICK.

[No. 18,038.   Filed May 11, 1897.   Rehearing denied October 8, 1897.]

MASTER AND SERVANT.—*Assumption of Risk.*—*Promise to Repair.*— Where a servant, by reason of the promise of the master to make repairs, continues in the service after notice of a defect in tools or

machinery augmenting the danger of the service, the servant may recover for an injury caused by such defect within such period of time after the promise to repair as would be reasonable to allow for such repairs to be made ; but when such promise to repair is not general, but dependent upon the completion of a certain job of work, the servant cannot recover for an injury received by reason of such defect before the completion of such job of work. *pp. 464–466.*

NEGLIGENCE.—*Master and Servant.*—Negligence cannot be imputed to the master for failure to foresee and guard against a danger which is wholly improbable. *p. 466.*

From the Lake Circuit Court. *Reversed.*

*J. W. Youche* and *A. D. Eddy*, for appellant.

*Peter Crumpacker, John G. Erdlitz* and *Edward W. Wickey*, for appellee.

McCABE, J.—The appellee sued the appellant to recover damages for a personal injury, caused to him, as alleged, by the negligence of the appellant as the employer of the appellee. The circuit court overruled a demurrer, for want of sufficient facts, to the complaint. The issues formed upon the complaint were tried by a jury, resulting in a special verdict under the law of 1895, upon which the court rendered judgment for the plaintiff.

The errors assigned call in question the action of the court in overruling the demurrer to the complaint, and the sufficiency of the facts found in the special verdict to support the judgment. The question of the sufficiency of the facts found in the special verdict to constitute a cause of action and to support a judgment is the same as that presented by the demurrer to the complaint for want of sufficient facts, and, therefore, we will only determine the sufficiency of the special verdict.

The verdict consists of 226 interrogatories and answers thereto, making it needlessly and inexcusably

long. The substance of the special verdict is, that the plaintiff was a corporation from August 27, 1894, until the present time, owned and operated a manufacturing plant, in which, among other things, it manufactured candles; that candle-moulding machines were used therein; that plaintiff engaged as a servant for defendant in its said business of candle making, August 27, 1894, and was from that time so employed up to November 16, 1894, when he was injured, as hereinafter stated; that he had no knowledge of candle-making machinery at the time he engaged in defendant's service; that the candle-moulding machine No. 1, about which plaintiff was injured, had been in use and operation in making candles since the year 1885; that defendant had used and operated said candle-moulding machine for one year prior to the time plaintiff was injured; that plaintiff operated said No. 1 machine for one month prior to his injury, that being a part of the duty he engaged to perform. The separation of the candles from the moulds was accomplished in turning a shaft by means of a crank on the end thereof, made to turn by hand. The shaft ran longitudinally. When turned, it would elevate and remove the candles in the moulds thereform. The end of said shaft was constructed with a square tenon onto which the eye of the crank would fit, so that it could not turn without turning the shaft. This crank was made to slip on and off of the shaft at will. It was used for the purpose of turning the shaft. The crank was not fastened to the shaft, but could be taken off and put on at pleasure. It required a man of ordinary strength at the time plaintiff was hurt to turn said crank in forcing the candles out of the moulds in said machine, they being filled with candles; that plaintiff was turning said crank and shaft at the time of his injury, for the purpose of raising the candles in

the moulds out of the same. The crank was fully on the tenon, which was worn smooth and somewhat tapering towards the end, and liable to slip off in operating the same, and there was some danger in using the same; that the crank and shaft were so worn at the time of plaintiff's injury, and a month prior thereto, that they did not fit closely together, such defects and want of repair herein found increased the danger attending the use of said machine; that the defects in said machine herein found, and failure to put said machine in proper condition were the direct cause of plaintiff's injury; that defendant had due notice and knowledge of said herein found defects and defective condition of said machine one week before said November 16, 1894, in ample time to have repaired said machine and remedied said defects before plaintiff's injury; that defendant, when complained to by plaintiff of said defects through one Bendle, representing it therein, promised plaintiff to remedy and repair said machine; and about a week before said injury plaintiff notified Charles J. McGregor of said defects, and he at the time promised to repair said tenon and said crank as soon as the order they were then filling was turned out; that said McGregor at said time had charge and superintendence over the entire candle factory of defendant, and the men employed therein; and at the time, and prior to said injury, said McGregor had occasionally employed and discharged servants of defendant in said factory, and it was his duty to see to and provide for repairing of the machinery of said candle factory. Said Bendle, at the time, and for six months prior thereto, was in the employ of defendant as foreman in said candle factory; that it was a part of said Bendle's duty, in his employment with defendant as such foreman, to inspect the machinery as to its condition, safety and state of

repair, and to repair the same when out of order; that plaintiff was induced by said promise of repair to remain in defendant's service, and work with said machine until he was injured; that neither said Bendle nor said McGregor fulfilled their promises to repair said machine, and neither of them repaired the same, nor did the defendant so repair said machine; that on the said day, November 16, 1894, plaintiff, in the discharge of his duty, as aforesaid, was attempting to turn the crank on said shaft, and said crank slipped off the shaft, the same being fully on said shaft before it so slipped off, and by reason of it so slipping off plaintiff was thrown against and precipitated upon the sharp corner of a raised platform, then and there situated, fourteen inches in height, and a part of the structure of the room in which said machine was situated; that said fall sprained and ruptured the muscles of the left lumbar region of plaintiff's back, producing a partial paralysis of the left side of his body, injured his left kidney and producing hemorrhage of his intestines, and a muscular tumor in the muscles of the left side of his back, making it necessary that an operation be performed to remove the same, which was done; that plaintiff's spine was injured, and he is lame as a result of said injury; that another result of such injury, blood and puss pass from him with his urine and his excrement; that he has suffered, and now suffers pain resulting from said injury; that said injuries are permanent and unfit him for any kind of manual labor. Plaintiff was thirty-two years of age, strong, able-bodied, and active, and in good health prior to his injury, and earned $3.00 a day, but his labor was not worth that much; that he incurred an indebtedness of $200.00 in and about endeavoring to cure himself of said injuries; that he was damaged in the sum of $5,000.00; that the danger in operating

said crank and machinery was not imminent or prob-able, either at the time the promises to repair were made, or at the time plaintiff was injured.

Plaintiff had worked in said candle factory·where he was hurt for three months prior to his being hurt, and was familiar with the manner of operating the machine No. 1 at the time his injury occurred.  The condition of the machine No. 1, as it was when plain-tiff's injury occurred, had existed one day prior there-to, as there was gradual wear, and the machine had been in substantially the same condition at the time plaintiff began operating it, with the exception of usual wear; and plaintiff learned of its condition in two weeks after he commenced operating it.  The crank slipped off the en°d of the shaft while plaintiff was operating it, about two weeks before he was in-jured, and frequently so slipped off during the time plaintiff used it prior to his injury, and while so using it.  A photograph of the crank on the shaft with a man holding the handle of the crank in his hands as if in the act of turning it, is made a part of the special verdict.  From this it appears to be about the same in principle as the crank on a fanning mill, or a grind stone, or that of a modern cider mill.  No amount of verbiage or multiplicity of words can obscure the fact that such a crank is made to slip on and off the shank at pleasure, and that in turning the shaft by hand any one with common sense must know that the power or pressure can be so applied as that the crank will stay on the tenon of the shaft, or that it can be so applied that it will work off.

That it is as simple as a hoe, an ax, a spade, or a ladder.  There is no finding as to the manner in which appellee applied the pressure or power to the crank, or as to what care he used to prevent its slipping off, or what precaution he observed to avoid injury to him-

self in case it should slip off. He knew it was liable to slip off, as the facts found show. Whether he was bound to anticipate injury to himself in case it did slip off is quite another question. The burden was on him to show that he was free from negligence contributing to his own injury. This burden he attempted to discharge by the following questions and answers in the special verdict: "Was the plaintiff in any wise at fault in acting in the premises as he did? Ans. No." "Did the plaintiff at all times exercise ordinary care under the circumstances? Ans. Yes."

This court, in *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. at p. 161, speaking of the special verdict in that case, said: "In the eleventh and fourteenth findings, it is stated that appellee received the injury without fault or negligence on his part.

"In the twelfth finding, it is stated that appellee exercised such care as might reasonably have been expected of him, considering his youth and inexperience.

"The fifteenth finding is, that appellant was careless and negligent in allowing the sliver or splint to remain and protrude from the rail. * * * * In each and all of these findings in relation to wrong and negligence on the part of appellant, the jury, instead of returning the facts and leaving it for the court to pronounce the law upon those facts, returned conclusions which embody conclusions of law. This they had no right to do, and hence all such conclusions must be disregarded; and hence there is nothing properly in the verdict showing that appellant was guilty of * * negligence, etc. * * * * It is apparent that the jury * * * returned legal conclusions instead of facts. The verdict is therefore defective upon its face, and so defective that judgment cannot be rendered upon it." To the same effect are

*Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Indiana, etc., R. W. Co.* v. *Barnhart,* 115 Ind. 399; *Chicago, etc., R. W. Co.* v. *Burger,* 124 Ind. 275; *Board, etc.,* v. *Bonebrake,* 146 Ind. 311, and cases there cited.

According to these authorities we would be justified in reversing the case on the sole ground that the special verdict fails to find facts showing that appellee was free from contributory negligence.

Appellee, however, has placed most of his reliance on the claim put forward, that the facts found bring him within the exception to the general rule that the employe who continues in the service of his employer after notice of a defect in machinery, tools or working place augmenting the danger of the service, assumes the risk as increased by the defect, the exception being that he does not assume such increased risk if the master expressly or impliedly promises to remedy the defect.

It may be conceded that such an agreement was found in the special verdict, and also that there was full notice of the defect. The promise of the master is the basis of the exception. *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20-27, and authorities cited on latter page. The ground on which the exception rests is the inducement held out to, and influencing the servant by the master's agreement to repair. If he remains in the service of his master after knowledge of the danger, in the absence of a promise of the master to repair, he assumes the risk. *Indianapolis, etc., R. W. Co.* v. *Watson, supra.*

In case of such promise to repair by the master, relied upon by the servant, inducing him to remain in the service, the servant may recover for an injury caused by such defect, within such a period of time after the promise as would be reasonable to allow for such repairs to be made. *Corcoran* v. *Milwaukee, etc., Co.,* 81

Wis. 191, 51 N. W. 328; *Indianapolis, etc., R. W. Co.* v. *Watson, supra; Jenny Electric, etc., Co.* v. *Murphy,* ·115 Ind. 566; *Burns* v. *Windfall Mfg. Co.*, 146 Ind. 261.

But here the promise was not to repair generally, which would imply that it was to be done within a reasonable time. The promise was to repair as soon as the present order was run out. How long that would take, whether a week, thirty days, six months, or a year after the promise was made is not found in the special verdict. For aught that appears it may have required thirty days, or six months to run out that order. At the end of that time the promise was to repair. That being so, there could have been no inducement influencing the appellee to remain in the service and work with the alleged dangerous machine during that thirty days or six months, expecting the danger to be obviated as is the case where the promise is to repair generally implying it is to be done within a reasonable time. In *Indianapolis, etc., R. W. Co.* v. *Watson, supra,* it was said on page 30: "Now, if there had been a promise to furnish a lantern at the end of the thirty days, that would not relieve plaintiff from the risk incurred by working without a lantern for that thirty days, when, as he says, he had no expectation that a lantern would be furnished." So, in the case before us, there could be no expectation on the part of the appellee that any repairs were to be made during the time required to run out the order on which appellee was at work at the time the promise was made. And, hence, during that time whatever its length was, the promise would not relieve plaintiff from the risk incurred by working without such repairs. Therefore, if the plaintiff's injury occurred during the time required to run out that order, and before it was finished, the promise to repair did not relieve him from the risk

incurred in working without the repairs. In other words, it left him as to risks from known dangers within that time as if no agreement to repair had been made, and that is that he assumed such risks. The time necessary to finish that order might have been, as already observed, thirty, or sixty days or even six months after the agreement to repair was made. The burden of showing that the appellee's injury occurred after the expiration of that time, and within a reasonable time thereafter for making the repairs was on the plaintiff, and the failure to find that the injury occurred after the order was finished and within such reasonable time thereafter must be held as a finding against him as to that point. *Helwig* v. *Beckner* (Ind. Sup.), 46 N. E. 644; *Burns* v. *Windfall Mfg. Co., supra.*

But there is no finding here as to what repair was needed, or what repair would obviate the danger. Indeed there was no finding that any repair could possibly obviate the danger. The crank, like a hoe, an ax, a spade, a garden rake, or a ladder is very simple and free from ordinary danger, yet all these implements may be so used as to inflict injury on those who use them.

It has been held by this court that so simple a thing as a ladder is not subject to the exception to the general rule above stated whereby an agreement to repair it exonerates the servant from his implied assumption of the risks resulting from its known defects. *Meador* v. *Lake Shore, etc., R. W. Co.*, 138 Ind. 290.

Moreover, it is found that there was no probable danger from the use of the machine. It is held by this court that it is not negligence to fail to foresee and guard against a danger that is wholly improbable. *Wabash, etc., R. W. Co.* v. *Locke*, 112 Ind. 404.

The facts found in the special verdict are not suffi-

cient to establish a cause of action and support the judgment.

The judgment is reversed, with instructions to render judgment upon the verdict in favor of the defendant.