Pennsylvania Railroad Company *v.* Martin.

[No. 13,773.   Filed March 14, 1930.   Rehearing denied July 28, 1930.   Transfer denied October 29, 1931.]

Samuel Parker, Parker, Crabill, Crumpacker & May and W. S. Carlisle, for appellant.

York & Rees, for appellee.

LOCKYEAR, J.—This action was brought by appellee, an employee of appellant, under the federal Employers' Liability Act (45 USCA §§51-59), to recover damages for the loss of an eye, caused by alleged negligence of appellant.

The appellee on October 16, 1926, the time he was injured, as stated in the complaint, was 56 years of age, and of ordinary intelligence. He had been employed by appellant as section hand at Mexico, Miami County, Indiana, for approximately 18 months before he was injured. Among his duties as section hand, was the duty of aiding in removing old ties from under the rails of the railroad and replacing them with new ties. To do the work of removing old ties, the appellant furnished the section men with common picks, clawbars and crowbars. After the spikes had been drawn from a tie to be removed by the use of a claw bar, one man would use a crowbar, and sometimes a shovel, to loosen the tie so that it could be drawn out from under the rails more easily. Then one man would use the crowbar to pry the tie forward and towards the place outside of the track where it was to be left until it could be taken up and removed. The man with the pick would stand, ordinarily, outside of the rail, and stick the point of the

pick into the end of the tie, and then pull on the handle and thus assist in removing the tie from under the rails.

At the time of the accident, a section man named Ed. Peters was working with the appellee and was using a crowbar and appellee was using a pick. By using these tools, they had removed one tie and immediately thereafter had begun work on the removal of another, being the one that they were working upon when appellee was injured. Appellee stood outside the rail where he could stick the pick in the end of the tie, and, by pulling on the pick handle, aid in removing the tie. He aimed to stick the point of the pick into the end of the tie outside of the rail. He missed the place in the tie at which he aimed and struck the ball of the rail with the point of the pick. When the point of the pick struck the rail, a chip or sliver from the point was dislodged, flew up and struck him in the eye, causing the loss of it.

At the time of the accident, and before, appellee was familiar with the pick, knew that the point was dull, that the handle was crooked, and that the head of the pick was loose in the handle—the three defects in the pick alleged in the complaint.

There was testimony from three witnesses called by appellee who were section hands and who worked along with appellee in removing old ties and putting in new ones and dressing up the track, that, at some indefinite and uncertain times, they or some of them had made complaint to the section foreman, George Steffey, under whose orders they worked, that the tools furnished to them with which to work were out of repair and not in good condition, and that the section foreman had said there would be new tools to work with some time and that new tools had been ordered and would soon be on hand. The appellee testified that he had spoken to the section foreman about the condition of the tools and that the section foreman had said that new tools had been

ordered and would be there before long. Appellee could not and would not state when it was that he had such conversation with the section foreman. He did state that the tools, and especially the picks, were not in good condition when he began work, and that many of them continued to be in bad condition up to the time he was injured. He further said that he told the foreman that the tools ought to be fixed. He told this to the foreman but once, and could not and did not state when it was that he told him.

There was a trial upon the issues formed on a single paragraph of complaint, to which a general denial was filed. The jury returned a verdict for the appellee for $7,000, and the court rendered judgment on this verdict for said amount.

The only error relied upon for reversal of the judgment is that it is alleged the court erred in overruling appellant's motion for a new trial, and the only grounds presented thereunder are that the verdict is not sustained by sufficient evidence and is contrary to law, and that the court erred in permitting certain witnesses called by the appellee to testify, over the objections of the defendant, in substance, that the picks and tools furnished to the section men who worked for the defendant in taking out old ties, and putting in new ties, and in repairing the track, were out of repair generally, and that the picks furnished to the workmen for doing said work were out of repair and in bad condition, and that they, the witnesses, had complained of the condition of the tools, especially of the picks, to the defendant's foreman, George Steffey, and that, referring to the tools generally, and to picks other than the one used by the appellee at the time he was injured, the appellant's foreman, George Steffey, had said, in substance, that new tools would be brought on to the job.

All of the reasons assigned can be disposed of by the

statement of the law pertaining to the facts as herein set out.

This pick was what is called in the cases and text books a "simple tool"; and the rights and remedies of the master who furnishes a defective simple tool to his servant for use in his work and of the servant who in the use of such tool is injured because of the defects therein are governed by the "simple-tool" rule. *Lehman* v. *Chicago, etc., R. Co.* (1909), 140 Wis. 497, 122 N. W. 1059.

In respect to this simple tool, the master owes no duty to the servant to inspect and know the condition of such tool, and the servant, if he actually knows of defects in the tool, or if the defects are palpable, so he should know of them, and uses or continues to use such tool, he assumes the risk of its use. *Jenny Electric, etc., Co.* v. *Murphy* (1888), 115 Ind. 566, 18 N. E. 30; *Meador v. Lake Shore, etc., R. Co.* (1894), 138 Ind. 290, 37 N. E. 721, 46 Am. St. 384; *American Carbon Co.* v. *Jackson* (1900), 24 Ind. App. 390, 56 N. E. 862; *Vandalia R. Co.* v. *Adams* (1909), 43 Ind. App. 664, 88 N. E. 353; *Beard v. Goulding* (1914), 55 Ind. App. 398, 103 N. E. 875; *Standard Oil Co. of Indiana* v. *Helmick* (1897), 148 Ind. 457, 47 N. E. 14; *Crum* v. *North Vernon Pump Co.* (1904), 34 Ind. App. 253, 72 N. E. 193; *McFarlan Carriage Co.* v. *Potter* (1899), 153 Ind. 107, 53 N. E. 465.

A leading case in Indiana on this subject is that of *Meador* v. *Lake Shore, etc., R. Co., supra.* On page 294, we find this language: "In cases, however, where persons are employed in the performance of ordinary labor, in which no machinery is used, and no materials are furnished, the use of which requires the exercise of great care and skill, it can be scarcely claimed that a defective instrument or tool furnished by the master, of which the employee has full knowledge and compre-

hension, can be regarded as making out a case of liability within the rule laid down. A common laborer who uses agricultural implements while at work upon a farm or in a garden, or one who is employed in any service not requiring great skill and judgment, and who uses the ordinary tools employed in such work, to which he is accustomed, and in regard to which he has complete knowledge, cannot be said to have a claim against his employer for negligence, if, in using an utensil which he knows to be defective, he is accidentally injured.

"In such cases it does not rest with the servant to say that the master has superior knowledge, and has thereby imposed upon him. He fully understood that the spade, the ax, the hoe, or the ladder, the instrument which he used, was not perfect, and if he was thereby injured it was by reason of his own fault and negligence. The fact that he notified the master of the defect, and asked for another implement, and the master promised to furnish it, in such a case, does not render the master responsible if an accident occurs. A rule imposing liability under such a circumstance would be far reaching in its consequences, and would extend the rule of *respondeat superior* to many of the vocations in life for which it was never intended. It is a just and salutary rule, designed for the benefit of employees engaged in work where machinery and materials are used of which they can have little knowledge, and not for those engaged in ordinary labor, which only requires the use of implements with which they are entirely familiar. The plaintiff, in the case at bar, was of the latter class of laborers, and the work in which he was engaged was not of a character which would entitle him to the protection of the principle referred to, as applied to the use of complicated machinery."

The rule of law applicable to simple tools furnished

by the master for the use of his servant does not maintain in a few jurisdictions, for example, Texas, Montana and South Carolina, but the rule is settled by the weight of authority in this state that the employee assumes the risk, although there are some decisions that do not seem to be in line with the weight of authority. For a discussion of these cases, reference is made to the case of *American Car, etc., Co.* v. *Nachand* (1911), 47 Ind. App. 204, 93 N. E. 1083.

It is contended by the appellee in this case that the facts as shown would warrant the jury in finding that there was a promise to repair the tool, which induced the employee to continue in the service; that the danger was not great and imminent; and, furthermore, that the pick was sharpened by unskilled persons, to wit, fellow servants of the employee, who were in the habit of sharpening the point of the pick by heating and pounding and without properly tempering the same, thus making the tool one with a latent defect therein which could not be shown or appreciated by the appellee.

In the case of the *Indianapolis, etc., R. Co.* v. *Watson* (1887), 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. 578, Judge Elliot says: "The rule which we regard as sound in principle and supported by authority may be thus expressed: The employee who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. The promise of the master is the basis of the exception. If the promise be absent the exception cannot exist. In support of our conclusion we refer to these authorities: *Russel* v. *Tillotson,* 104 Mass. 201; *Linch* v. *Sagamore Manfg. Co.,* 143 Mass. 206; *Hatt* v. *Nay,* 144 Mass. 186; *Buzzell* v. *Laconia Manfg. Co.,* 48 Maine 113 (77 Am. Dec. 212, 218, and authorities, n.) ; *Galves-*

*ton, etc., R. R. Co.* v. *Drew,* 59 Tex. 10 (46 Am. R. 261) ; *Webber* v. *Piper,* 38 Hun. 353 (33 Alb. L. J. 64) ; *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333; Wood Master and Servant, 21; Beach Cont. Neg. 372.

"The rule absolving the servant from the assumption of risks is an exception to the general rule, for the general rule is that the servant does assume all the ordinary risks of the service he enters. There must, therefore, be some ground for the exception, and the only solid ground that can be found is the inducement held out by the agreement of the master. If this be not so, then an employee at his first entrance into service might object and protest, and successfully claim that he was exempt from the perils of the service. Or, if our theory be not sound, a mere complaint or objection might, in effect, overturn the general rule and this would result in confusion and uncertainty. We can see no way to hold that the servant is exempt from the known risks of his service where there is no express or implied contract on the part of the master, without completely nullifying the general rule. The servant is at liberty to quit the service, and if he remains after knowledge of its danger he assumes the risks, even though he may object or complain, unless he is induced to continue by a promise by the master to remove the cause that augments the danger, since, if this be not true, it must be true that any objection or complaint made at any time will absolve him from the risk, and this conclusion cannot be sustained. As the exception concedes and tries the general rule, it cannot be allowed to destroy it, for if it were allowed to do this, it would cease to be an exception. *Sweeney* v. *Berlin, etc., Co.,* 101 N. Y. 520."

The action in a state court under the federal Employers' Liability Act, *supra,* is governed, as to matters of substantive law, by the act and the decisions of the federal courts applicable thereto,

but, as to matters of procedure, it is governed by the law of the forum. *Pittsburgh, etc., R. Co.* v. *Ireton* (1920), 73 Ind. App. 449, 126 N. E. 431.

This case all goes to the question of whether the appellee assumed the risk, for the federal Employers' Liability Act, *supra,* does not abrogate the defense of assumption of risk as it does the question of contributory negligence, and an examination of the authorities shows that the rule in the Indiana courts and the federal courts is in harmony as far as substantive law is concerned on the subject of assumption of risk.

The uncontradicted evidence in this case shows a state of facts where the appellee assumed the risk, and, therefore, the verdict of the jury is not sustained by sufficient evidence, and is contrary to law.

Judgment reversed.