DAVIS *v.* LOUISVILLE AND NASHVILLE RAILWAY COMPANY, ET AL.

[No. 19,266. Filed April 10, 1961. Rehearing dismissed May 11, 1961. Transfer denied November 2, 1961.]

420

*John D. Clouse* and *Russell S. Armstrong*, both of Evansville, for appellant.

*William T. Fitzgerald* and *J. William Kleindorfer*, both of Evansville, for appellee, Louisville and Nashville Railroad Company.

*Isadore J. Fine, Joe S. Hatfield, Charles H. Sparrenberger, Eugene P. Fine* and *Edward E. Meyer*, of counsel, all of Evansville, for appellee, Chicago and Eastern Illinois Railroad Company.

MYERS, J.—This is an appeal from a judgment entered in the Superior Court of Vanderburgh County, Indiana, wherein demurrers were sustained to appellant's amended complaint to recover damages for personal injuries sustained by appellant, pursuant to the provisions of the Federal Employers' Liability Act.

In substance, appellant alleges in his complaint that appellees were engaged in the business of maintaining and operating railroads in interstate commerce; that their trains went into and departed from the Union

Depot at Evansville, Indiana; that the two appellees herein had an understanding and agreement between themselves for the servicing and readying of trains which ran between Evansville and Chicago, Illinois; that this servicing included the icing of passenger coaches and Pullman cars for air-conditioning purposes and the preparation of ice water; that on July 14, 1953, appellant, 37 years of age, was employed by appellee, Louisville and Nashville Railroad Company, and had been so employed continuously for a considerable time prior thereto; that appellant's duties included the icing of the passenger coaches and Pullman cars of both appellees, pursuant to their agreement with each other; that approximately one month prior to July 14, 1953, appellant while so employed was suddenly taken ill with a heart attack and compelled to leave his work temporarily; that this illness and "physical condition resulting therefrom" was known to both appellees, because it was "observed" by appellant's superior at work, who was an agent of appellees acting within the scope of his authority.

The complaint proceeds to allege that thereafter, but prior to July 14, 1953, appellant returned to his said employment with the "acquiescence and consent" of appellees; that they carelessly and negligently failed to determine or ascertain appellant's "true physical condition" and to have appellant examined by a reputable physician in order to determine his fitness to return to his work; that appellees could have so determined his "true physical condition," which condition was such as to make it reasonably probable that his said work would have been injurious to his health and would produce the ailments complained of, that is, a heart attack and asthma; that, with their knowledge of appellant's "said condition," appellant was ordered to

perform his customary work, and that he did so perform it.

Appellant further alleges that the "nature of plaintiff's said illness," prior to July 14, 1953, and the "symptoms resulting therefrom" were such as to indicate the propriety of a physical examination before permitting him to return to work; that he was required to lift blocks of ice weighing approximately fifty pounds each, and to either throw them to someone on top of a car or to catch them; that in so handling the ice his body became saturated with moisture and that he was required to remain in a saturated condition for long periods of time with no opportunity afforded to become dry.

Appellant next alleges that on or about the 14th day of July, 1953, while he was so employed by appellees, and while acting in the scope of his employment, and while he was engaged in icing the coaches and Pullman cars of a train, he was, on account of his said work, "caused to become sick, sore, and disabled, and he did then and there finally suffer an attack of asthma and a heart attack, from which said conditions thus produced, and the consequential and residual effects thereof, plaintiff has ever since been forced and compelled to suffer, and plaintiff will forever hereafter suffer therefrom."

The complaint goes further to allege that the appellees, and each of them, were careless and negligent in the following respects:

"A. In carelessly and negligently allowing and permitting and ordering, commanding, and directing plaintiff to perform and to engage in said type of employment, as aforesaid, without first ascertaining his physical fitness therefor.

"B. In carelessly and negligently failing and neglecting to afford or to provide plaintiff with a

means of avoiding or counteracting the effects of said moisture and saturation upon his body and person.

"C. In carelessly and negligently failing and neglecting to afford or to provide plaintiff with a means of protecting his body and person from said moisture and saturation attending his said work.

"D. In carelessly and negligently failing and neglecting to furnish and provide adequate assistance, means, or modern approved equipment to aid him and lighten his tasks in said handling and movement of said blocks of ice for the purposes, as aforesaid,

"E. In carelessly and negligently using blocks of ice of such dimensions, sizes, and weights, as aforesaid, in the said air-conditioning of said passenger coaches and Pullman cars of said trains."

It was then alleged that as a result of the alleged negligence, appellant was and would be subject to medical and hospital expenses, that he was totally and permanently incapacitated, and damages were asked in the amount of $100,000.

Each of appellees filed its separate motion to make more specific and to strike certain designated parts of the complaint, on the ground that the averments set forth were conclusions of fact, and asked that appellant be required to plead sufficient facts to constitute negligence as a matter of law. Attached to each motion was a memorandum in support thereof. These motions were overruled by the trial court.

Thereafter each of the appellees filed a demurrer to the complaint, based upon the ground that the complaint did not state facts sufficient to constitute a cause of action. Attached to each demurrer was a memorandum submitted in support thereof, the substance of which was to the effect that the amended complaint did not contain allegations of any act or omission on the part of appellees which constituted a violation of any duty

owing to appellant. The trial court sustained each of these demurrers. A motion was filed by appellant requesting the court to reconsider its rulings. After reconsideration, the court reaffirmed its rulings and sustained each of the demurrers.

Appellant next filed a second amended complaint. In response to this, appelles filed individual motions to strike it from the files as a sham and frivolous pleading. These motions were sustained. By agreement of the parties, the amended complaint and the separate demurrers thereto were deemed refiled and, appellant refusing to plead over, judgment was entered for appellees. The second amended complaint was made a part of the record by a special bill of exceptions.

The assignment of errors, in brief, states that the court erred in sustaining the demurrers to the complaint and in sustaining the motions to strike out the second amended complaint.

Appellant states that a demurrer admits all facts well pleaded, and all reasonable inferences to be gathered therefrom, so that, in considering this complaint, which is challenged by demurrer, all facts will be deemed stated that could be implied by the allegations made, by fair and reasonable intendment, and that such implied facts carry the same potency as those directly stated, citing authorities therefor.

Appellees take issue thereto, and state that the rule is that when a plaintiff opposes and procures the court to overrule a motion to make his pleading more specific, it is deemed an admission that no facts were relied upon except expressly averred, and that this court cannot imply facts from allegations in the amended complaint, but must look solely to the allegations of fact contained therein.

In *Swanson* v. *Slagal, Administratrix* (1937), 212 Ind. 394, 8 N. E. 2d 993, the Supreme Court states that if a motion to make more specific is overruled, no facts not alleged in the complaint will be implied by reason of the allegations of conclusions which have been unsuccessfully challenged by the motion. *Terre Haute, etc., Traction Co.* v. *Scott* (1926), 197 Ind. 587, 150 N. E. 777; *Pennsylvania R.R. Co.* v. *Hemmer, Admx.* (1934), 206 Ind. 311, 186 N. E. 285, 189 N. E. 137.

In the case of *Adams* v. *Holcomb* (1948), 226 Ind. 67, 71, 77 N. E. 2d 891, 893, the court was faced with a complaint to which a motion to make more specific was addressed, asking that the plaintiffs be required to state facts necessary to sustain certain conclusions. The motion had been overruled by the trial court. Thereafter a demurrer was filed, one of the grounds being that the complaint did not state facts sufficient to constitute a cause of action. The court said as follows:

> "In considering the allegations of this complaint we are forced to disregard all conclusions of fact contained therein complained of in appellant's motion to make the complaint more specific, which motion should have been sustained. The appellees' act in opposing and procuring the court to overrule this motion must be deemed an admission that no facts were relied upon except expressly averred. *Enterprise, etc., Pub. Co.* v. *Craig* (1924), 195 Ind. 302, 144 N. E. 542; *Neal* v. *Baker* (1926), 198 Ind. 393, 153 N. E. 768."

We may dispose of the specific charges of negligence alleged by appellant, therefore, because he has alleged only conclusions of fact unsupported by any specific facts.

As this action was brought pursuant to the Federal Employers' Liability Act (45 U. S. C. A., §§51-59),

the rights of appellant and the duties of appellees depend upon that act, and applicable principles of common law as interpreted by the federal courts govern as to all matters of substantive law. *Pennsylvania R. Co.* v. *Johnson, Admx.* (1930), 91 Ind. App. 412, 420, 169 N. E. 358. As to matters of procedure, the action is governed by the laws of the State of Indiana. *Pennsylvania R. Co.* v. *Martin* (1931), 93 Ind. App. 258, 266, 170 N. E. 554.

Appellant has alleged as acts of negligence appellees' failure to provide appellant with "a means of protecting his body and person" from moisture and saturation attending his work and in failing and neglecting "to afford or to provide plaintiff with a means of avoiding or counteracting the effects of said moisture and saturation upon his body and person."

The common-law rule has been stated to the effect that an employee must look out for himself in so far as provision for his physical wants are concerned, and there is no duty upon the employer toward his employee as to healthfulness or sanitation. 35 Am. Jur., *Master and Servant*, §105, p. 533.

In *Emerson Brantingham Co.* v. *Growe* (1922), 191 Ind. 564, 569, 133 N. E. 919, 920, a complaint had been filed alleging that an employee had suffered the loss of an eye which had been destroyed by a flying sliver of steel when a chisel was struck by a sledgehammer in the employer's factory. Negligence was charged to the employer by failure to provide the employee with "goggles or some other device" in order to prevent such flying slivers striking him in the eye. In stating that a demurrer to the complaint should have been sustained, the court said:

"Further averments that it was practicable for appellant to supply appellee 'with goggles or some

other device' to prevent the flying slivers from striking him in the eyes do not make out a cause of action for negligence. There is no statute which requires goggles to be furnished by the employer, the facts alleged do not show that any duty to supply them had been imposed by custom or contract, either express or implied, and no such duty was imposed by the common law in the absence of a contract."

However, the court went one step further, and said this:

"The averment that appellant failed to provide 'some other device' for the protection of the workman, though it was practicable to do so, *is not the statement of any facts at all*." (Our emphasis.)

In the absence of allegations that there was a duty to supply appellant with means or clothing to protect himself against saturation on account of the moisture, which was imposed either by statute, custom, or contract, the averments are insufficient to charge negligence; and, in addition thereto, the allegations that appellees were negligent in failing "to provide plaintiff with a means of protecting his body" and "of avoiding or counteracting the effects of said moisture" are not statements of fact, but are merely conclusions from which we cannot draw any implications.

Appellant has also alleged that appellees were negligent in using blocks of ice of the alleged dimensions, sizes, and weights (50-pound blocks) in the air-conditioning of the coaches and Pullman cars. This is a general allegation of negligence, with no statement of facts connecting the size of the blocks of ice to appellant's injuries except by the most tenuous inferences.

Appellant further alleges that appellees were negligent in failing "to furnish and provide adequate assistance, means, or modern approved equipment to aid him and lighten his tasks" in the handling of the blocks of ice. Again appellant has made

allegations which are nothing but conclusions, and give us no clue as to what kind of assistance, or means, or equipment the appellees should have provided. Thus, this allegation fails within the prohibition of *Emerson Brantingham Co.* v. *Growe, supra.*

The Federal Employers' Liability Act does not authorize recovery in the absence of negligence, and the act is broad enough to cover any negligence for which a common carrier engaged in interstate commerce can be responsible to its employees thereunder. In using the term "negligence," it includes all the meanings given it by courts and comprehends any negligence of the employer causing or proximately contributing to the injury, whether antecedent or subsequent to negligence of the employee. 56 C. J. S., *Master and Servant*, §173, c. (1), p. 847, and authorities cited therein.

Under the act, the negligence referred to is common-law negligence. It has been defined as the lack of due care under the circumstances, or the failure to do what a reasonably prudent person would ordinarily have done under the existing circumstances. *Larsen* v. *Chicago & N. W. R. Co.* (1949), 171 F. 2d 841; *Atlantic Coast Line R. Co.* v. *Johnson* (1952), 199 F. 2d 750, 200 F. 2d 619; *Marcades* v. *New Orleans Terminal Co.* (1953), 111 F. Supp. 650; *Tiller* v. *Atlantic Coast Line R. Co.* (1943), 318 U. S. 54, 63 S. Ct. 444, 87 L. Ed. 610, 143 A. L. R. 967.

In all cases involving negligence there are three elements essential to a cause or right of action: (1) The existence of a duty or obligation on the part of defendant to protect plaintiff from injury. (2) Failure of a defendant to perform or discharge that duty. (3) Injury resulting to plaintiff from such failure by defendant. These elements when brought

together constitute actionable negligence, and the absence of any one renders the complaint bad. *Shuttleworth* v. *Crown Can Co.* (1948), 165 F. 2d 974.

Failure to act, or omission, is a ground of negligence, but to permit recovery in such case it must be made to appear that such failure was the proximate cause of the accident. Plaintiff must allege and prove not only that the defendant was negligent, but that the injury resulted proximately in whole or in part from that negligence. *Brady* v. *Southern Ry. Co.* (1943), 320 U. S. 476, 64 S. Ct. 232, 88 L. Ed. 239; *Louisville & N. R. Co.* v. *Maddox* (1938), 236 Ala. 594, 183 So. 849, 118 A. L. R. 1318. The act does not make defendant the insurer of the safety of its employees while they are on duty. The basis of its liability is its negligence, not the fact that injuries occurred. *Larsen* v. *Chicago & N. W. R. Co., supra; Chicago, Rock Island & Pacific Railroad Co.* v. *Lint* (1954), 217 F. 2d 279; *Chesapeake and Ohio Railway Company* v. *Burton* (1954), 217 F. 2d 471.

Under the common law there was no duty imposed upon an employer to examine his employees to ascertain if they were physically fit to do the job they sought. *Potter Title & Trust Co.* v. *Ohio Barge Line* (1950), 184 F. 2d 432; *McGuigan* v. *Southern Pac. Co.* (1952), 112 Cal. App. 2d 704, 719, 247 P. 2d 415.

In this case the amended complaint alleges that approximately one month prior to July 14, 1953, appellant was suddenly taken ill by reason of a heart attack. He was compelled to leave his work temporarily. He returned to work some time prior to July 14, 1953, "with the acquiescence and consent" of the appellees. It is stated that at all times the appellees knew of his "physical condition." Upon his return to work, it is

alleged that he was ordered and directed by the appellees to perform the work which he had been previously engaged in, that is, handling 50-pound blocks of ice, and that he was so ordered to perform this work, without a physical examination, by appellees, wherein they could have determined appellant's "true physical condition," which condition was such as to make it reasonably probable that the work when undertaken by appellant would be injurious to his health. The specific act of negligence charged is in "allowing and permitting and ordering, commanding, and directing plaintiff to perform and to engage in said type of employment, as aforesaid, without first ascertaining his physical fitness therefor." There is no allegation that appellant was unaware of his condition or had no knowledge of it. This being so, we must assume that he was as fully aware of his own physical condition as were appellees when he returned to work.

It has been held that it is negligence for an employer to place his employee in arduous employment when the employer knows, or has reason to believe, that the employee is afflicted with a disease from which an injury might naturally follow in such employment when the employee *does not know* he is so afflicted, nor know of dangers incident to such employment by reason of the disease. *Atchison, Topeka & Santa Fe Ry. Co.* v. *Perryman* (1948), 200 Okla. 266, 271, 192 P. 2d 670, 675. The Oklahoma court quotes from the case of *L. & N. R.R. Co.* v. *Sawyers* (1916), 169 Ky. 671, 675, 184 S. W. 1123, 1124, as follows:

" 'The only safe and practical rule is that each man is the best judge of his own physical strength and powers of endurance; that he knows better than any other can when the limit has been reached, and when, in following his instinct of self-preservation, he must desist and exercise his right

under the law to give up his work if it is more than he can stand.' "

The common-law rule has been stated that the servant must determine for himself whether his health and strength are adequate for the performance of the labor agreed to be performed. This duty is not upon the master. *Warden-Pullen Coal Co.* v. *Wallace* (1936), 176 Okla. 604, 606, 56 P. 2d 802, 804. In the last-cited case the court speaks as follows:

> "We know of no rule of law that imposes upon the master the obligation to supervise the contracts of employment which the servant may enter into with him and other parties in order to protect him from exertions beyond his strength. The right freely to enter into contracts of employment and to agree upon the terms thereof is one of the most sacred prerogatives of a free people, and even the state itself cannot infringe upon this right, except under the police power to protect the public health and welfare."

In the annotation in 175 A. L. R., page 990, the following is stated:

> "In 3 Labatt, Master and Servant, 2d ed. 287, §1082, the author, recognizing that unfitness may create a cause of action in favor of the unfit servant himself, says 'The reason why recovery on this ground is so rarely sought is doubtless that, in the nature of the case, the unfit servant is almost always aware of his unfitness. The effect of his knowledge is to bring the situation within the scope of the principle that, if a person of apparently full age and complete understanding undertakes certain duties, he is presumed to appreciate and accept the risks incident to those duties.' "

In *Glidden* v. *Bath Iron Works* (1947), 143 Me. 24, 54 A. 2d 528, 175 A. L. R. 976, the Maine Supreme Judicial Court reversed the overruling of a demurrer to a complaint wherein it was alleged that the plaintiff sus-

tained an aggravation of a serious heart disease induced by manual labor and strenuous physical exertion required of him as an employee of the defendant. The court stated that the complaint did not state a cause of action because it did not allege that the defendant knew, or should have known, that the plaintiff did not know his own condition. In that case plaintiff had alleged that he did not know of his condition.

In finding the complaint in this case insufficient, we do not need to go as far as the Maine court because there was no allegation herein that appellant was unaware or had no knowledge of his condition. We hold therefore that in a situation of this kind appellant has not alleged sufficient facts to show a duty on the part of appellees, the breach of which would establish common-law negligence.

Appellant has cited many cases wherein allegations were made of negligence which the courts deemed sufficient to establish a cause of action. These cases involved incidents where the employee was coerced or forced by the employer to take some action pursuant to command which the employer knew, or should have known, could have resulted in injury, or where the employee was required to use defective tools or appliances, or where the employee was put in a place of danger, or ordered to do unusual labor bcause of an emergency. These elements are not involved in this case. Appellant did not allege that he was forced to return to work, but returned with the "acquiescence and consent" of appellees. It is alleged that he was ordered and commanded to perform the work he previously had been performing, but there is no allegation that there was anything unusual or extraordinary about the work. The implications are that it was the same type of work that he had always undertaken. There are no allega-

tons that he complained of his duties or requested a change in his work. There are no allegations that the first heart attack was caused by or related to his employment in any way. There are no allegations that he was placed in unsafe and dangerous premises to perform his work, or that any equipment he may have used in connection therewith was defective.

Appellant argues that appellees are attempting to insert contributory negligence and assumption of the risk into this case. Sections 53 and 54 of the act provide, respectively, that contributory negligence of the employee shall not bar a recovery by him, but, except in certain limited cases, shall result in a proportional diminution of damages, and abolishes the common-law doctrine of assumption of the risk. However, it must be remembered that at common law these were always defenses to an acknowledged charge of negligence. Here there is no adequate statement of facts charging appellees with negligence of any kind.

In *Knox* v. *Schomaker* (1942), 191 Okla. 337, 339, 129 P. 2d 841, 842, the court states the rule as follows:

> "The rule is that where the servant is aware of his infirmity or his unfitness for the particular work, the master is guilty of no negligence toward him in merely allowing him to continue in the same employment. The master is not bound at his peril to discharge the servant. *Whether the servant assumes the risk or is guilty of contributory negligence is of no importance.* The demands of common, ordinary justice will permit no other conclusion. Where the uncontradicted evidence shows that the servant was as well aware of his unfitness as was the master, the master as a matter of law is not guilty of primary negligence." (Our emphasis.)

Thus the doctrine of assumption of the risk and contributory negligence has no application in this case be-

cause there is no allegation of primary negligence on the part of appellees.

Appellant has made a valiant attempt to present a cause of action herein. However, we are restrained by the accepted rule of the common law from upholding this complaint. We know of no statute or judicial decision which places an affirmative duty upon these appellees to require a workman for hire to take a physical examination before going to work or before returning to work from an illness. It may well be that it is socially desirable to insist upon such a physical examination of all employees in industry before permitting them to go to work, just as is done with prospective members of the armed forces of the United States. It is quite possible that it would be economically sound practice to require such preliminary physical qualification and thereby increase efficiency and lower costs of maintenance. But we express no opinion as to this, for it seems to us that the legislative branch of our government is charged with the power and reasoning of determining whether such requirement should be created. Either that, or the same could be accomplished by means of private agreement between employer and employee. If such obligation is to be placed upon the employer, the appropriate means is by either contract or legislative action, and not by judicial fiat. See *Potter Title & Trust Co.* v. *Ohio Barge Line, supra.*

As a further reason for sustaining the trial court, we point out again that appellant has pleaded conclusions of fact from which, even if we were permitted, we could draw only the most speculative inferences and implications. He has alleged that at the time of the first heart attack appellees then knew of his "condition." He then alleged that if appellees had given him a physical examination they could have determined his "true

condition." There are no facts alleged to indicate in any respect what his "condition" or his "true condition" was and whether or not there was any difference between the two. Whatever inferences or implications could be drawn from these conclusions would be only the wildest guesswork.

Appellant finally claims error in the ruling of the trial court striking the second amended complaint from the files as a sham and frivolous pleading. The record shows that by agreement of the parties the amended complaint and the separate demurrers thereto were deemed refiled. Appellant has based his case on the amended complaint and has presented his arguments thereto. By so doing, and in agreeing that this complaint should be refiled, he has waived any error which may have been committed in striking out the second amended complaint.

We do not find that the court committed error in sustaining the demurrers to the complaint.

Judgment affirmed.

Ax, C. J., and Cooper and Ryan, JJ., concur.

NOTE.—Reported in 173 N. E. 2d 749.